# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**



**ANDREA N. BERRY, MS, PMP, CSM, SECURITY+,**

Plaintiff,

v.

**CITY OF ALEXANDRIA, VIRGINIA;**

**ALEXANDRIA REDEVELOPMENT AND HOUSING AUTHORITY ("ARHA");**

**JOHN/JANE DOE OFFICIALS 1–25;**

**HUD-LINKED REDEVELOPMENT PARTICIPANTS 1–10,**

Defendants.

Civil Action No. 1:26 cv 1257

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiff Andrea N. Berry, MS, PMP, CSM, Security+ ("Plaintiff"), proceeding pro se, alleges as follows:

1

## I. INTRODUCTION

1. This action arises from continuing redevelopment, zoning restructuring, housing administration, demolition, urban renewal, density expansion, public housing transformation, affordability loss, and redevelopment implementation systems operating within Alexandria, Virginia.

2. Plaintiff alleges that Defendants implemented, maintained, coordinated, approved, facilitated, and/or benefited from redevelopment and housing systems that disproportionately impacted historically Black communities and caused continuing housing, economic, procedural, and constitutional injury.

3. Plaintiff alleges that Defendants maintained ongoing redevelopment and housing systems producing:

- continuing affordability pressure;
- redevelopment-linked displacement pressure;
- housing instability;
- economic harm;
- procedural deprivation;
- community disruption;
- unequal redevelopment burdens;
- and continuing disparate housing impacts.

4. Plaintiff further alleges that Defendants' actions and redevelopment systems disproportionately affected historically Black Alexandria communities including:

- Parker-Gray;
- The Berg;
- Seminary/Mudtown;
- Fort Ward;
- Uptown;
- Cameron Valley;
- and related historically impacted communities.

5. Plaintiff seeks relief under:

- The Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619;
- 42 U.S.C. § 1983;
- The Fourteenth Amendment;
- Equal Protection principles;
- Procedural Due Process protections;
- Monell municipal liability doctrine;
- and the declaratory and injunctive authority of this Court.

## II. JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to:

*   28 U.S.C. § 1331;
*   28 U.S.C. § 1343;
*   42 U.S.C. § 3613;
*   and 28 U.S.C. § 1367 where applicable.

7.  This action arises under the Constitution and laws of the United States.
8.  Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 because the events, redevelopment systems, administrative actions, and housing-related conduct giving rise to these claims occurred within Alexandria, Virginia.

## III. PARTIES

### Plaintiff

9.  Plaintiff Andrea N. Berry, MS, PMP, CSM, Security+ is an individual associated with redevelopment-affected and historically impacted Alexandria communities.
10. Plaintiff alleges injuries including:

*   continuing housing instability;
*   affordability pressure;
*   redevelopment-related economic harm;
*   displacement pressure;
*   relocation-related burdens;
*   increased housing costs;
*   community disruption;
*   emotional distress;
*   procedural injury;
*   and continuing unequal housing impacts.

11. Plaintiff further alleges continuing injury arising from redevelopment implementation systems, affordability loss, zoning restructuring, redevelopment concentration, and municipal redevelopment policies.

### Defendants

12. Defendant City of Alexandria, Virginia is a municipal entity responsible for:

*   redevelopment planning;

3

- zoning administration;
- municipal planning;
- redevelopment implementation;
- density expansion systems;
- land-use regulation;
- redevelopment financing;
- housing policy;
- and redevelopment coordination.

13. Defendant Alexandria Redevelopment and Housing Authority ("ARHA") is a redevelopment and housing authority involved in:

- redevelopment administration;
- public housing restructuring;
- mixed-income redevelopment;
- demolition coordination;
- redevelopment implementation;
- and housing administration.

14. Plaintiff is presently unaware of the identities of John/Jane Doe Officials 1–25 and HUD-Linked Redevelopment Participants 1–10 who participated in redevelopment, zoning, demolition, redevelopment financing, planning, parcel restructuring, housing administration, or redevelopment implementation relevant to this action.
15. Plaintiff reserves the right to amend this Complaint to identify additional parties.

## IV. FACTUAL BACKGROUND

### A. Historical Pattern of Redevelopment and Displacement

16. Historically Black Alexandria communities experienced redevelopment, condemnation, demolition, urban renewal, slum clearance, public housing restructuring, and redevelopment-linked displacement over multiple decades.
17. Historical redevelopment impacts involved:

- Parker-Gray;
- The Berg;
- Seminary/Mudtown;
- Fort Ward;
- Uptown;
- Cameron Valley;
- and related historically Black communities.

18. Historical redevelopment records document:

- demolition of African American residences;
- redevelopment-linked displacement;
- segregated housing systems;
- public housing restructuring;
- condemnation activity;
- and redevelopment concentration.

19. Historical registry and redevelopment materials expressly acknowledge displacement of African American residents through redevelopment and public housing activity.
20. SHPO and Section 106 records confirm:

- HUD-related redevelopment involvement;
- demolition review;
- redevelopment-linked adverse effects;
- and municipal awareness of impacts affecting historically significant African American communities.

21. Historical redevelopment systems contributed to long-term housing instability and redevelopment concentration affecting historically Black neighborhoods.

---

## B. Parcel Segmentation and Administrative Systems

22. Administrative and parcel records demonstrate:

- redevelopment segmentation;
- layered filings;
- parcel fragmentation;
- redevelopment-linked restructuring;
- repeated amendments;
- and coordinated municipal administrative handling.

23. Supporting records include:

- RW201 records;
- C501 datasets;
- C502 records;
- M501 records;
- redevelopment-linked parcel overlays;
- and administrative redevelopment records.

5

24. Plaintiff alleges these systems reflect continuing redevelopment administration, redevelopment coordination, administrative opacity, and continuing redevelopment implementation systems.

---

## C. Current Housing Instability and Continuing Redevelopment Systems

25. Defendants continue implementing redevelopment, zoning, density expansion, housing restructuring, demolition, affordability restructuring, and redevelopment implementation systems affecting historically impacted Alexandria communities.

26. Current municipal planning records demonstrate:

- redevelopment expansion;
- zoning restructuring;
- redevelopment financing systems;
- density expansion initiatives;
- mixed-income redevelopment;
- long-range housing restructuring;
- redevelopment corridor planning;
- and redevelopment implementation frameworks.

27. Alexandria's Housing 2040 framework expressly states that Alexandria continues restructuring long-term housing systems through 2040.

28. Alexandria's "Zoning for Housing / Housing for All" initiative expressly acknowledges:

- "past and current barriers to equitable housing access,"
- and the "continued impact" of discriminatory housing policies on low-income residents and people of color.

29. Defendants continue implementing:

- density expansion initiatives;
- redevelopment-oriented planning;
- redevelopment financing systems;
- mixed-income redevelopment;
- zoning modifications;
- corridor redevelopment;
- and redevelopment preservation systems.

30. Current redevelopment projects include:

- Samuel Madden redevelopment;
- Cardinal Path;
- Witter Place;

6

- Mount Vernon-Glebe redevelopment;
- Beauregard redevelopment initiatives;
- and additional mixed-income redevelopment projects.

31. Alexandria's Housing Master Plan expressly states:

"The steady loss of affordability in rental housing due to pressures in Alexandria's multifamily market have caused many low- and moderate-income households to be priced out of the city."

32. The Housing Master Plan further states:

"The cost of housing in Alexandria has caused other residents to leave to seek greater affordability."

33. The Housing Master Plan acknowledges proposed demolition involving:

"nearly 2,500 market affordable and workforce rental units" within the Beauregard redevelopment area.

34. The Housing Master Plan further acknowledges:

"The number of apartments affordable to households with incomes at or below 60% AMI dropped from approximately 2,300 to just over 800."

35. Plaintiff alleges Defendants therefore possessed actual knowledge concerning:

- affordability pressure;
- redevelopment-linked displacement;
- continuing housing instability;
- redevelopment-driven housing transformation;
- and unequal housing impacts.

---

## D. Ongoing Administrative Effects and Municipal Benefit

36. Plaintiff alleges continuing administrative dysfunction, redevelopment opacity, and procedural deficiencies involving redevelopment and housing systems.
37. Public reporting involving ARHA referenced:

- tenant dissatisfaction;
- governance controversies;
- oversight failures;
- and administrative instability.

38. The Housing Master Plan repeatedly links redevelopment systems to:

- economic sustainability;
- redevelopment implementation;
- density expansion;
- redevelopment financing;
- tax revenue growth;
- economic competitiveness;
- and municipal redevelopment objectives.

39. Defendants acknowledged the use of:

- redevelopment financing systems;
- redevelopment implementation frameworks;
- density incentives;
- zoning incentives;
- and long-term redevelopment planning tools.

40. Plaintiff alleges Defendants derived continuing municipal and economic benefit from redevelopment systems while redevelopment burdens remained concentrated within historically impacted communities.

## E. GIS and Geographic Concentration Evidence

41. GIS and geographic analysis demonstrate redevelopment clustering and concentration involving historically impacted Alexandria communities.
42. Plaintiff's supporting evidence includes:

- parcel overlays;
- redevelopment concentration analysis;
- geographic linkage evidence;
- GIS coordinates;
- and redevelopment clustering data.

43. Plaintiff alleges redevelopment systems and housing transformation efforts disproportionately affected historically impacted communities and redevelopment corridors.

8

## F. Plaintiff-Specific Harm

44. Plaintiff experienced redevelopment-related housing instability and economic harm associated with redevelopment pressures, affordability loss, and continuing housing transformation systems within Alexandria.

45. Plaintiff incurred:

- increased housing costs;
- relocation-related burdens;
- moving expenses;
- temporary housing costs;
- redevelopment-linked economic harm;
- utility-related expenses;
- affordability pressure;
- and continuing housing instability.

46. Plaintiff further experienced:

- community disruption;
- loss of neighborhood stability;
- emotional distress;
- redevelopment-related stress;
- and continuing uncertainty associated with redevelopment and affordability pressures.

47. Plaintiff alleges continuing harm resulting from ongoing redevelopment systems, affordability loss, zoning restructuring, redevelopment concentration, and municipal redevelopment implementation.

48. Current preliminary damages estimates include:

- approximately $20,200 in economic damages;
- approximately $30,300 in non-economic and civil rights damages;
- and estimated total damages currently exceeding $50,000 exclusive of equitable relief, restitution, costs, tax-related offsets where appropriate, and any additional relief determined through discovery and trial.

49. Plaintiff reserves the right to amend and supplement damages calculations as discovery proceeds.

## V. CONTINUING VIOLATION ALLEGATIONS

50. Plaintiff's claims are not limited to isolated historical redevelopment events.

9

51. Defendants continue implementing redevelopment, zoning, density expansion, affordability restructuring, redevelopment financing, demolition, and redevelopment implementation systems through official long-term planning frameworks including:

- Housing 2040;
- Housing Master Plan implementation;
- Housing for All;
- redevelopment corridor systems;
- mixed-income redevelopment frameworks;
- and redevelopment preservation systems.

52. The Housing Master Plan establishes redevelopment implementation systems extending through at least 2030 and expressly references:

- future redevelopment;
- demolition activity;
- affordability loss;
- housing restructuring;
- redevelopment preservation;
- and continuing housing transformation.

53. Plaintiff alleges continuing:

- housing instability;
- affordability pressure;
- redevelopment-linked economic harm;
- redevelopment concentration;
- displacement pressure;
- procedural burdens;
- and unequal impacts arising from ongoing redevelopment systems.

54. Plaintiff therefore alleges continuing violations and continuing redevelopment systems rather than merely completed historical conduct.

## VI. CLAIMS FOR RELIEF

## COUNT I — FAIR HOUSING ACT (DISPARATE IMPACT)

55. Plaintiff incorporates all preceding paragraphs.
56. Defendants implemented and maintained redevelopment, zoning, density, demolition, redevelopment financing, housing administration, and redevelopment

implementation systems producing disproportionate housing effects on historically Black communities and protected populations.

57. Defendants' conduct contributed to:

- housing instability;
- affordability pressure;
- redevelopment concentration;
- displacement pressure;
- unequal redevelopment burdens;
- and continuing unequal housing impacts.

58. Defendants' own Housing Master Plan acknowledges continuing affordability loss and redevelopment-linked displacement pressure.

59. Plaintiff suffered injury as a result of Defendants' redevelopment and housing systems.

## COUNT II — 42 U.S.C. § 1983 (PROCEDURAL DUE PROCESS)

60. Plaintiff incorporates all preceding paragraphs.

61. Plaintiff possessed constitutionally protected interests involving:

- housing stability;
- procedural fairness;
- redevelopment-related process;
- and housing-related interests.

62. Defendants deprived Plaintiff of adequate procedural protections including:

- meaningful notice;
- transparent administrative handling;
- adequate opportunity to challenge redevelopment impacts;
- and redevelopment-related procedural safeguards.

63. Defendants acted under color of state law.

## COUNT III — 42 U.S.C. § 1983 (EQUAL PROTECTION)

64. Plaintiff incorporates all preceding paragraphs.

65. Defendants maintained redevelopment and housing systems disproportionately burdening historically Black communities.

11

66. Plaintiff alleges continuing unequal redevelopment effects, redevelopment concentration, affordability burdens, and continuing housing disparities.
67. Defendants possessed actual knowledge concerning redevelopment-linked unequal housing impacts and continuing affordability loss.

## COUNT IV — MUNICIPAL LIABILITY (MONELL)

68. Plaintiff incorporates all preceding paragraphs.
69. Defendants maintained official redevelopment, zoning, density, financing, housing, demolition, and redevelopment implementation systems constituting institutional policies, customs, practices, and redevelopment frameworks.
70. The Housing Master Plan establishes coordinated institutional redevelopment systems involving:

- City Council;
- Planning Commission;
- Office of Housing;
- Planning & Zoning;
- ARHA;
- Office on Human Rights;
- and related municipal entities.

71. Defendants established:

- redevelopment implementation systems;
- redevelopment financing structures;
- zoning incentives;
- density expansion tools;
- redevelopment preservation systems;
- and mixed-income redevelopment frameworks as official municipal policy.

72. The violations alleged herein reflect continuing institutional conduct rather than isolated events.

## COUNT V — TAKINGS / PROPERTY INTERFERENCE

73. Plaintiff incorporates all preceding paragraphs.
74. Defendants engaged in redevelopment, parcel restructuring, demolition, zoning, financing, and administrative conduct interfering with protected housing and property-related interests.

12

75. Plaintiff alleges continuing economic and housing-related harm resulting from redevelopment systems and administrative conduct.

---

## COUNT VI — DECLARATORY AND INJUNCTIVE RELIEF

76. Plaintiff incorporates all preceding paragraphs.
77. Plaintiff seeks declaratory and injunctive relief concerning:

- continuing redevelopment systems;
- redevelopment implementation;
- ongoing housing restructuring;
- redevelopment-related procedural protections;
- and continuing unequal housing impacts.

---

## VII. DAMAGES

78. Plaintiff alleges damages including:

- redevelopment-linked economic harm;
- increased housing costs;
- relocation expenses;
- moving costs;
- temporary housing costs;
- utility-related expenses;
- affordability pressure;
- housing instability;
- emotional distress;
- community disruption;
- and continuing redevelopment-related harm.

79. Plaintiff further alleges continuing economic and housing-related injury arising from ongoing redevelopment, affordability loss, and housing restructuring systems.
80. Current preliminary damages estimates include:

- approximately $20,200 in economic damages;
- approximately $30,300 in non-economic and civil rights damages;
- and estimated total damages currently exceeding $50,000 exclusive of equitable relief, restitution, costs, tax-related offsets where appropriate, and any additional relief determined through discovery and trial.

13

81. Plaintiff reserves the right to amend and supplement damages calculations as discovery proceeds.

---

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Andrea N. Berry, MS, PMP, CSM, Security+ respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

A. Award compensatory damages in an amount to be determined at trial for:

- housing instability;
- redevelopment-related economic harm;
- displacement-related losses;
- increased housing costs;
- moving and relocation expenses;
- emotional distress;
- community disruption;
- and continuing economic injury arising from Defendants' conduct;

B. Award restitution and equitable monetary relief for:

- redevelopment-related financial losses;
- relocation expenses;
- temporary housing costs;
- utility setup costs;
- deposits;
- housing-related expenditures;
- and other redevelopment-related economic burdens incurred by Plaintiff;

C. Award an additional amount, where legally permissible, sufficient to offset reasonably foreseeable adverse tax consequences associated with any lump-sum compensatory, restitutionary, equitable, or monetary recovery awarded in this action, including any tax gross-up relief deemed appropriate by the Court;

D. Award declaratory and injunctive relief sufficient to:

- prevent unlawful displacement;
- prevent continuing redevelopment-related harm;
- prevent continuing unequal housing impacts;
- require lawful redevelopment-related procedural protections;
- and ensure compliance with federal fair housing and constitutional requirements;

14

E. Order appropriate tenant protections, relocation safeguards, housing stabilization measures, and equitable housing-related relief for persons impacted by redevelopment and housing restructuring systems at issue in this action;

F. Award Plaintiff allowable costs, equitable relief, and any additional relief the Court deems just and proper.

## IX. JURY DEMAND

82. Plaintiff demands trial by jury on all issues triable by jury.

**Respectfully submitted,**

Andrea N. Berry, MS, PMP, CSM, Security+
Plaintiff, Pro Se

Email: andreainvents@gmail.com

Date: May 7, 2026

3731 Donnell Drive Apt 104
Forestville MARyLAND 20747
240.304.8694

15